UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LATOYA PERRY,

        Movant,

v.

UNITED STATES OF AMERICA,

        Respondent.
_____/

Criminal Case No. 11-20677
Civil Case No. 16-12078

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**ORDER DENYING AS MOOT MOVANT'S MOTION TO CORRECT AND/OR VACATE SENTENCE UNDER 28 U.S.C. § 2255 [84]; GRANTING MOVANT'S MOTION TO AMEND/CORRECT MOTION TO VACATE SENTENCE [87]; DENYING AS MOOT MOVANT'S AMENDED MOTION TO VACATE SENTENCE UNDER 28 U.S.C. § 2255 [88]; GRANTING MOVANT'S MOTION FOR LEAVE TO FILE SECOND AMENDED MOTION TO VACATE SENTENCE [104]; DENYING MOVANT'S SECOND AMENDED MOTION TO VACATE SENTENCE [104-1]; AND DENYING CERTIFICATE OF APPEALABILITY**

On March 13, 2012, Movant Latoya Perry pleaded guilty, pursuant to a Rule 11 Plea Agreement [Dkt. 27] to one count of Distribution of a Controlled Substance, in violation of 21 U.S.C. § 841(a). The Honorable Julian A. Cook sentenced Ms. Perry to 188 months' (15.67 years') imprisonment pursuant to the Career Offender provisions, U.S.S.G. § 4B1.1, and Judgment [67] was entered on March 7, 2014.

Ms. Perry's Motion to Correct and/or Vacate Sentence under 28 U.S.C. § 2255 [84] was filed on June 8, 2016. She also filed a Motion to Amend/Correct the Motion to Vacate [87] and an Amended Motion to Vacate [88] on June 24, 2016.

Most recently, on August 3, 2017, Movant filed a Motion for Leave to File a Second Amended Motion to Vacate [104].

In the Second Amended Motion to Vacate [104-1], Ms. Perry sets forth claims of ineffective assistance of counsel. She argues that her first two attorneys were ineffective because they incorrectly concluded that Ms. Perry was a career offender based upon her prior conviction for escape in Indiana, and because they failed to inform the Court of Ms. Perry's low IQ and mental health history at sentencing.

For the reasons discussed below, the original Motion to Correct and/or Vacate Sentence under 28 U.S.C. § 2255 [84] and Amended Motion to Vacate [88] are **DENIED AS MOOT**. The Motion to Amend/Correct Motion to Vacate [87] and Motion for Leave to file Second Amended Motion to Vacate [104] are **GRANTED**. The Second Amended Motion to Vacate [104-1] is **DENIED**. Ms. Perry is denied a certificate of appealability.

**FACTUAL AND PROCEDURAL BACKGROUND**

On November 1, 2011, Ms. Perry was charged via information [17] with one count of distributing crack cocaine, in violation of 21 U.S.C. § 841(a). A superseding information [25] that added two additional crack distribution counts was filed on March 8, 2012. Several days later, Ms. Perry executed a Guilty Plea Questionnaire [26] and Plea Agreement [27], both of which indicated that the

conviction carried a minimum sentence of five years' imprisonment. In the Questionnaire, Ms. Perry indicated that: she could read, write, and understand English; she fully understood the nature of the charges against her; and she understood the questions asked of her in the Questionnaire form. The Plea Agreement contained the following appeal waiver provision:

> Defendant waives any right she may have to appeal her conviction. If the sentence imposed does not exceed the maximum allowed by Part 3 of this agreement, defendant also waives any right she may have to appeal her sentence. If the sentence imposed is within the guideline range determined by Paragraph 2B the government agrees not to appeal the sentence, but retains its right to appeal any sentence below that range.

(Dkt. 27 at 5).

During the plea hearing on March 13, 2012, Ms. Perry stated that she sold 31.75 grams of crack cocaine to a woman in exchange for $1,350. (Dkt. 75, Plea Hr'g Tr. at 15:20-21). She acknowledged that she had the right to plead not guilty. *Id.* at 6:23-25. Counsel for the Government informed the Court of the 40-year maximum sentence. Ms. Perry said that her sentencing exposure did not change her decision to plead guilty. *Id.* at 19:3-5. Judge Cook stated that he was satisfied that Ms. Perry had established a factual basis for the offense and that in his opinion, Ms. Perry's offer of guilt was voluntarily and intelligently made. He found no evidence of any mitigating factors that would have adversely affected Ms. Perry's ability to fully understand the nature and consequences of her admission of guilt. *Id.* at 24:16-24.

Due to a breakdown in the attorney-client relationship, Ms. Perry's first attorney filed a Motion for Withdrawal of Attorney [34] on July 30, 2012. Judge Cook granted the motion, and a second attorney was appointed to represent Ms. Perry on September 4, 2012 [39].

Through her second attorney, Ms. Perry filed a Motion to Withdraw Plea of Guilty [43] on January 14, 2013. The basis for this motion was that Ms. Perry's former lawyer incorrectly stipulated that Ms. Perry's conviction for escape qualified her as a career offender under the Sentencing Guidelines. During the hearing on the motion, which took place on March 28, 2013, Ms. Perry withdrew the motion to withdraw. Judge Cook confirmed that Ms. Perry had not been pressured to withdraw her motion and that she did so freely and voluntarily. (Dkt. 72, Mot. Hr'g Tr. at 5:5-10).

Ms. Perry moved *ex parte* for Appointment of Psychiatric Forensic Examiner [51-1] on May 2, 2013. A psychologist, Dr. Jeffrey Wendt, examined Ms. Perry at the Midland County Jail on May 30, 2013. After administering psychological testing and conducting a clinical interview, Dr. Wendt estimated that Ms. Perry functioned in the average range of intelligence. He opined that Ms. Perry had exhibited symptoms of mental illness throughout her life, but had only recently been diagnosed and treated.

The Government considered Dr. Wendt's methodology and conclusions to be suspect, and moved for a Psychological Examination and Report [54] from a Bureau of Prisons ("BOP") psychologist on July 9, 2013. After Judge Cook granted the motion, Ms. Perry underwent a 45-day examination by Dr. Lesli Johnson, a forensic psychologist, at a BOP facility in Los Angeles, California. Dr. Johnson found that Ms. Perry was not "experiencing any major mood disturbances, such as a major depressive disorder, mania, cognitive disturbances or impairment in concentration or memory." (Dkt. 77 at 16). She also found no evidence that Plaintiff suffered from any other type of mental illness.

At Ms. Perry's sentencing hearing on March 7, 2014, Dr. Wendt opined that Ms. Perry suffered from posttraumatic stress disorder ("PTSD") and bipolar disorder. Judge Cook rejected Dr. Wendt's conclusions, and, after reviewing the 18 U.S.C. § 3553 factors and the pre-sentence report, sentenced Ms. Perry to 188 months' (15.67 years) imprisonment.

Notwithstanding the appeal waiver provision in the plea agreement, Ms. Perry filed a Notice of Appeal [65] on March 14, 2014. Several weeks later, Ms. Perry's second lawyer withdrew as counsel of record.

The Sixth Circuit granted the Government's Motion to Dismiss on September 11, 2015 [83]. Ms. Perry filed her first Motion to Vacate [84] on June 8, 2016. The case was reassigned to this Court the following day.

Ms. Perry's third attorney entered an Appearance [89] on July 7, 2016.

The following day, Ms. Perry filed a Motion to Substitute Counsel [90].[1] Current counsel was assigned to the case on July 12, 2016.

## LEGAL STANDARD

To succeed on a motion to vacate, set aside, or correct sentence, a petitioner must allege: "(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)). "To prevail on a claim of constitutional error, a prisoner 'must demonstrate the existence of an error of constitutional magnitude which had asubstantial and injurious effect' on the proceedings." *Fairley v. United States*, No. 12-CR-20786, 2017 WL 2535462, at *1 (E.D. Mich. June 12, 2017) (quoting *Hamblen v. United States*, 591 F.3d 471, 473 (6th Cir. 2009)).

## ANALYSIS

I. ***Beckles v. United States*, 137 S. Ct. 886 (2017) precludes Perry's claim that the residual clause of the Career Offender Guidelines is void for vagueness.**

---

[1] Ms. Perry's first and third lawyers work for the Federal Defender Office ("FDO"). Because Ms. Perry alleged ineffective assistance of counsel against her first lawyer, the third lawyer withdrew to avoid a conflict of interest.

In the initial Motion to Vacate Sentence [84], Ms. Perry argued that she was serving an unconstitutional sentence in light of the Supreme Court's holding in *Johnson v. United States*, 135 S. Ct. 2551 (2015).

Ms. Perry was sentenced under the Career Offender provisions of the U.S. Sentencing Guidelines, U.S.S.G. § 4B1.1. In *Beckles v. United States*, 137 S. Ct. 886, 897 (2017), the Supreme Court held that "the advisory Sentencing Guidelines are not subject to a due process vagueness challenge," and therefore, *Johnson* was inapplicable to the Guidelines. Both Perry and the Government agree that this claim is now foreclosed by *Beckles*.

## II. Ineffective assistance of counsel

Ms. Perry argues that her first and second lawyers were constitutionally ineffective for two reasons: first, because they incorrectly concluded that her 1999 escape conviction was a crime of violence under § 4B1.2, and accordingly, stipulated that she was a career offender in her Rule 11 plea agreement[2]; and second, because they did not bring Ms. Perry's low IQ or pre-existing mental health issues to the Court's attention during sentencing.

The Government argues that the ineffective assistance argument fails because Ms. Perry neither alleges nor establishes prejudice. The Government notes

---

[2] In Ms. Perry's Supplemental Brief [99], filed on March 28, 2017, she emphasized that trial counsel was also ineffective because, in light of *Mathis v. United States*, 134 S.Ct. 2243 (2016), he mistakenly advised Ms. Perry that she was a career offender.

that in 2012, when Ms. Perry entered her plea, a conviction under Indiana's escape statute would have been considered a crime of violence per Supreme Court and Sixth Circuit case law. In addition, the Government says, trial counsel negotiated a plea agreement that contained a minimum sentence of seven years, which left Ms. Perry in a better position than she would have been in had she lost at trial.

To establish ineffective assistance of counsel, Ms. Perry must show that her counsel rendered deficient performance and thereby prejudiced her defense so as to render the outcome of the proceedings unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). *Strickland* requires the Court "to evaluate trial counsel's performance 'from counsel's perspective at the time of the alleged error and in light of all the circumstances.'" *Benning v. Warden, Lebanon Correctional Inst.*, 345 Fed. Appx. 149, 157 (6th Cir. 2009) (quoting *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001)).

In the context of the plea bargaining process, the first *Strickland* prong remains the same, but the second prong – the prejudice requirement – "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* This means that Ms. Perry must establish a reasonable probability that, but for counsel's errors, she "would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). To establish that she would have gone to trial, Movant "must convince the court that a decision to reject the plea

bargain would have been rational under the circumstances." *Padilla v. Kentucky*, 559 U.S. 356, 366 (2010).

Courts "'strongly presume' counsel to have 'rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Short v. United States*, 471 F.3d 686, 692 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). To the extent that Ms. Perry challenges her attorneys' conduct during plea negotiations, she "must show that counsel did not attempt to learn the facts of the case and failed to make a good-faith estimate of a likely sentence. [She] must also show that [her] lawyer's deficiency was a decisive factor in [her] decision to plead guilty." *Id.* (quoting *United States v. Cieslowski*, 410 F.3d 353, 358-59 (7th Cir. 2005)).

### A. The first lawyer

Ms. Perry's first lawyer represented her from April 14, 2011 through August 27, 2012. At counsel's advice, Ms. Perry entered into a Rule 11 Plea Agreement with the Government. The Plea Agreement indicated that Ms. Perry was a career offender and that her guidelines' range was 188-235 months (approximately 15.5 years-19.5 years).

Even assuming that Ms. Perry's escape conviction could not be used as a career offender predicate, and that her first lawyer rendered deficient performance,

she has not shown that she suffered prejudice as a result. *See Premo v. Moore*, 562 U.S. 115, 121 (2011).

To be clear, Ms. Perry does not seek to undo her guilty plea. Rather, she is attempting to reduce her sentencing level, from a guidelines' range of 188 to 235 months to 92 to 115 months (7.67- approximately 9.5 years). Ms. Perry does not claim that, but for her first lawyer's ineffective assistance, she would have insisted on going to trial. Rather, she contends that had counsel realized that her conviction for escape was not a career offender predicate, "there is reasonable probability that the parties would have negotiated a new Rule 11 agreement" and she would have received a lower sentence. (Dkt. 104-1).

Ms. Perry has failed to establish that she "would have gone to trial if her attorney's performance had been different." *Hunter v. United States*, 160 F.3d 1109, 1115 (6th Cir. 1998). Ms. Perry's assertion – that she "wound up with a less favorable plea or sentence than [s]he otherwise would have accepted with the advice of competent counsel" – is "insufficient to establish actual prejudice." *Short*, 471 F.3d at 696-97 (citing *Hill*, 474 U.S. at 59).

In addition, as discussed below, although Ms. Perry now disputes her lawyer's position – that she was a career offender under the guidelines, due in part to her conviction for escape – she had the opportunity to challenge it, but then declined to do so. This weighs against a finding of prejudice: Ms. Perry voluntarily

changed her mind about withdrawing her guilty plea and possibly proceeding to trial.

### B. The second lawyer

#### 1. Ms. Perry's Career Offender Status

Ms. Perry's second attorney represented her from September 4, 2012 through April 7, 2014. On January 4, 2013, Ms. Perry moved to withdraw her guilty plea on the grounds that her 1999 escape conviction could not be used as a career offender predicate. However, during a hearing on March 28, 2013, Ms. Perry told Judge Cook that she was withdrawing her motion to withdraw her guilty plea. She explained that the "seven years sounds better than withdrawing it for the . . . ten years minimum." (Dkt. 72, Mot. H'rg at 5:13-15). Ms. Perry's lawyer explained that Ms. Perry

> does not want to withdraw her offer of guilt. She wants to stay with the original Rule Eleven Plea Agreement which was her guilty plea. And she understands that in the Rule 11 Plea Agreement, although her guidelines are 188 to 235, that there is an opportunity for her to ask the Judge, this Court, to depart from those guidelines down to seven years. And she has decided that she prefers the opportunity to ask the Court for a departure to seven years in the Plea Agreement versus if we succeeded on the motion, the Prosecutor has indicated that he would file or reinstate the mandatory ten years.

*Id.* at 6:17-25, 7:1-5.

Ms. Perry "prefer[red] to stay with the original Rule 11 Plea Agreement" and wanted "the opportunity to ask the Court to depart as low as seven years." *Id.*

at 7:8-12. Judge Cook confirmed that Ms. Perry knew that he could reject her request for a downward departure. *Id.* at 7:15-18.

A court owes "substantial deference to counsel's decisions not to raise an argument, even a meritorious argument, if the decision 'might be considered sound trial strategy.'" *McPhearson v. United States*, 675 F.3d 553, 559 (6th Cir. 2012) (quoting *Hodge v. Hurley*, 426 F.3d 368, 385 (6th Cir. 2005)). Counsel explained that "after many, many jail visits and conversations during this entire process," Ms. Perry believed that it was in her best interest to try to persuade Judge Cook to give her a sentence as low as seven years. (Dkt. 72, Mot. H'rg at 7:6-7). In context, this decision to, in effect, argue for a downward departure makes sense: the statute under which Ms. Perry was charged subjected her to a five year mandatory minimum, and because she had a number of other drug trafficking convictions, she could have been exposed to a 10 year mandatory minimum. *See* 21 U.S.C. § 841(b)(1)(B). Instead, Ms. Perry's lawyers were able to obtain a plea agreement that provided her the possibility of being sentenced to as few as seven years' imprisonment.

### 2. Ms. Perry's mental health issues

Ms. Perry submits that her second lawyer was also ineffective for failing to highlight her low IQ and pre-existing mental health issues at the sentencing hearing.

This argument lacks merit. Before sentencing, Judge Cook reviewed Dr. Johnson's and Dr. Wendt's reports. Dr. Wendt also testified extensively at the hearing about Ms. Perry's mental health history. Dr. Wendt said that when he began his forensic evaluation of Ms. Perry, she "described a long term history of depressed mood" as well as "a history of manic symptoms involving her energy levels, activity levels, sleep patterns . . . mood swings, and impulsive behavior." (Dkt. 74, Sent. H'rg at 23:15-19). She also told him of her "symptoms of anxiety related to traumatic events in the past" and "the possible history of mental illness" in her family. *Id.* at 23:24-25, 25:18-19.

Counsel discussed Ms. Perry's mental health issues, as well as the need for substance abuse treatment and proper medications, with Judge Cook. *Id.* at 101:5-8. Counsel stated that, given Ms. Perry's traumatic and violent history, "that we hear now that she is mentally ill should not be surprising to anyone." *Id.* at 104:6-7.

## Conclusion

As discussed above, Ms. Perry has failed to establish *Strickland* prejudice. She has not shown that she would not have pleaded guilty, and would have proceeded to trial, absent counsels' alleged errors. In addition, Ms. Perry is not entitled to a certificate of appealability because she fails to make a substantial showing of the denial of a constitutional right. *See Tennard v. Dretke*, 542 U.S.

274, 282 (2004) (citing 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Accordingly,

**IT IS ORDERED** that the original Motion to Amend Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [84] and Amended Motion to Vacate [88] are **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that the Motion to Amend/Correct Motion to Vacate [87] and Motion for Leave to file Second Amended Motion to Vacate [104] are **GRANTED**.

**IT IS FURTHER ORDERED** that the Second Amended Motion to Vacate [104-1] is **DENIED**.

**IT IS FURTHER ORDERED** that Movant is denied a certificate of appealability, for the reasons explained above.

**SO ORDERED**.

s/Arthur J. Tarnow
Arthur J. Tarnow
Dated: May 1, 2018         Senior United States District Judge