UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,        Case No. 2:11-cr-20677

vs

                          HON. ARTHUR TARNOW

LATOYA LAVONDA PERRY,

        Defendant.
_____

## DEFENDANT'S SUPPLEMENTAL RESPONSE TO HER
## MOTION FOR COMPASSIONATE RELEASE

When she last appeared in Court, Ms. Perry faced the predictable consequences of physical and sexual abuse, self-medicating drug addiction, mental illness, and a decent into a pattern of criminal behavior.  The Court's colleague, the Honorable Julian Abele Cook, Jr. sentenced Ms. Perry to 188 months in prison, with a recommendation for designation to an institution with a comprehensive drug treatment program.  In light of the COVID-19 pandemic, she asks this Court for compassionate release.

**1.**      **Personal Background and Health**

Ms. Perry's childhood is a fractured picture of sexual and physical abuse.  She reported that she was sexually abused by her maternal uncle during family trips and visits with him.  At age seven, Ms. Perry's uncle paid her to allow him to touch her breasts and genitals.  By age 10, the payments were for sexual acts and relations.  See Revised PSR, June 11, 2019 at 21.  Ms. Perry and her mother were subjected to drunken beatings from her stepfather who would then throw them out into the streets.  Id.  At age 13, Ms. Perry sold crack cocaine as her means of escape from her abusive

stepfather. Id. During this time, she lived with Terry Wallace, a drug dealer who impregnated her at age 14. Id.

There is little doubt her childhood contributed to her poor mental health. Ms. Perry's adult years have provided little relief from trauma. In 2004, Ms, Perry was raped. Id. at 24. Close family and friends, including her brother and his girlfriend were murdered. In February 2011, Ms. Perry was diagnosed as Bipolar I Disorder with symptoms of mild depression and poly substance abuse. Id at 23. She also suffers from post-traumatic syndrome. The Revised PSR indicates that she is medicated with Topamax, Elavil, and Neurontin. Id at 22. The onslaught of personal tragedies and mental illness pushed Ms. Perry into searching for relief from these tragedies through illegal narcotics and prescription medications. Ms, Perry self-reported as having used alcohol, marihuana, cocaine, ecstacy, and unprescribed xanax and valium. She experimented with heroin for over a month after the shooting death of her brother's girlfriend. Id. at 24.

Ms. Perry will be 45 years old in November. She is overweight. According to her Revised PSR, she is 5'8" and weighs 180 pounds. Id at 22. Ms. Perry is medicated for anemia which was likely brought on by her addictions. Years of drug abuse have likely weakened her immune system, leaving Ms. Perry especially vulnerable to severe illness from COVID 19. A history of alcohol abuse will negatively affect liver and pancreatic functions, leaving Ms. Perry with immune system problems and susceptibility to pneumonia.[1] Smoking cocaine leaves ones lungs damaged, and the smoker vulnerable

---

[1] Sarkar, D., Jung, M.K., & Wang, H.J. (2015). Alcohol and the immune system. *Alcohol Research 37(2), 153-155*. https://www.ncbi.nlm.nih.gov/pmc/articles/PMC4590612/

to lung infections like bronchitis and pneumonia.[2] Smoking marijuana reduces the body's ability to resist infections from viruses, bacteria, fungi, and protozoa. Because of the suppressed ability of the immune system, it may also reduce the ability of an immune system to be able to destroy cancer cells.[3]

### 2.     Criminal History and Current Sentence

As mentioned, Ms. Perry's criminal history began in her early teens, as a means to escape sexual and physical abuse.  Her record indicates patterns that are typical of addicts. Ms. Perry is a repeat offender of drug possession in amounts that equal personal use and/or possession of drug paraphernalia. She has convictions for shoplifting and car theft, offenses that are typical of drug addicts who break the law to pay for their drugs.  Id at 11, 17-18.  Finally there are convictions and charges for selling small amounts of narcotics, again typical addicts who fund their habits by selling drugs for their dealers.  Id at 16.  Added to that is the obvious conclusion that Ms. Perry was not just funding her addictions, but was also self-medicating to cope with the abuses she suffered as a child.

The offense that led her to the custody of the Bureau of Prisons also involved relatively small amounts of narcotics.  Over the course of one month in September and October 2010, Ms. Perrry made three sales of crack cocaine to undercover agents.  Id

---

[2]University of Illinois at Chicago. (1997). *How cocaine may weaken the immune system*.  htttps://www.sciencedaily.com/releases/1997/04/970423114328.htm

[3] National Academies of Sciences, Engineering, and Medicine; Health and Medicine Division; Board on Population Health and Public Health Practice; Committee on the Health Effects of Marijuana. (2017). *The Health Effects of Cannabis and Cannabinoids: The Current State of Evidence and Recommendations for Research*. Washington DC: National Academies Press.
https://www.ncbi.nlm.nih.gov/books/NBK425755/

at 5. In sum, the amount of cocaine base involved 51.43 grams of cocaine base. Id. In Wayne County Circuit Court, she likely would have faced of a prison sentence of one or two years for this amount of crack cocaine. In this jurisdiction, Ms. Perry received 188 months in prison. Since 2016, Ms. Perry's time in prison has been uneventful. There have been no disciplinary actions against her since 2916 and is currently assigned to clear conduct status.

## ARGUMENT

1. **Exhaustion of Administrative Recourse**

Under Section 3582(c)(1)(A), a Defendant may move for a reduction of sentence after either (1) "the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or (2) "the lapse of 30 days from the receipt of [a request to the Bureau of Prisons to bring a motion on the defendant's behalf] by the warden of the defendant's facility," whichever is earlier. The court may reduce a sentence under Section 3582(c)(1)(A) "if it finds that extraordinary and compelling reasons warrant such a reduction" and "that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." The Court must "also consider[] the factors set forth in 18 U.S.C. §3553(a) to the extent that they are applicable." 18 U.S.C. §3582(C)(1)(A); *United States v. Snell,* No. 16-20222 (E.D.Mich 6/2/2020, J.Tarnow) It is counsel's information and belief that 30 days have passed since Ms. Perry submitted her request to warden at FCI Tallahassee requesting compassionate release. .

2. **Compelling and Extraordinary Circumstances Necessitate Relief**

"To determine what the Sentencing Commission considers 'extraordinary and

compelling,' the Court turns to United States Sentencing Guidelines § 1B1.13." *United States v. Cantu*, 423 F. Supp. 3d 345, 349 (S.D. Tex. 2019) (citing 28 U.S.C. §994(t)). "However, the Sentencing Commission's policy statements have not been amended since the enactment of the First Step Act, and consequently, a portion of the policy statement now squarely contradicts 18 U.S.C. §3582, as amended." *United States v. Perdigao,* No. 07-103, 2020 WL 1672322, at *2 (E.D. La, April 2, 2020)

"[T]his discrepancy means that the Sentencing Commission does not have a policy position applicable to motions for compassionate release filed by defendants pursuant to the First Step Act." *Id*. (citation omitted). "While the old policy statement provides helpful guidance," *United States v. Beck*, 425 F.Supp.3d 573 (M.D.N.C. 2019), numerous other courts who have ruled on this issue have held that they have the "discretion to determine what constitutes an 'extraordinary and compelling reason[]' on a case by case basis, and reliance on the policy statement may be helpful, but not dispositive," *Perdigao*, 2020 WL 1672322, at *2 (citation omitted); *see also United States v. Haynes*, No. 93 CR 1043 (RJD), 2020 WL 1941478, at *14 (E.D.N.Y. Apr. 22, 2020).

The numbers are staggering. There have been more than 5.3 million cases of COVID-19 and over 170,000 deaths in the United States alone. In Florida alone, where Ms. Perry currently is incarcerated at the Tallahassee FCI, there have been more than 567,000 cases of COVID 19 infection.[4] Corrections officers at Tallahassee FCI fear the worst as the BOP is beginning to transport inmates into the facility from jails and other

---

[4] https://floridahealthcovid19.gov

prisons around the country.[5] In one recent transport from the Marshal's Service, five out of the eight inmates brought to FCI Tallahassee tested positive for COVID-19. Id.

The conditions in prisons by nature of their purpose create a petri dish for infectious diseases. Inmates have little, if any, access to cleaning products to sanitize their environment. Personal protection equipment such as masks and gloves are difficult to find. Even the guards at FCI Tallahassee complain that the resources in their prison are so scare that they have to bring their own masks and gloves to protect themselves. Id. Combined with the inability to socially distance inmates, "jails and prisons are powder kegs for infection" and "[r]ealistically the best - perhaps the only - way to mitigate the damage and reduce the death toll is to decrease the jail and prison population by releasing as many people as possible." *United States v. Skelos,* No. 15-cr-317(KMW), 2020 U.S.Dist. LEXIS 64639, at *4 (S.D.N.Y. 2020)(quoting *United States v. Nkanga,* No. 18-cr-713, 2020 U.S.Dist. LEXIS 56188, at *1 (S.D.N.Y. March 31, 2020).

Ms. Perry reports that there are over 100 women in her unit. There are no doors separating the prisoners, and it is impossible to socially distances from each other. Each prisoner is given one paper mask a week. It is difficult, at best, to access hand sanitizer, and cleaning wipes to keep her living quarters clean. As alarming is the fact that the BOP has recently begun to initiate transfers from other prisons and jails. The most recent transfer involved eight women inmates. It is Ms. Perry's information and belief that five were infected with COVID-19.

---

[5] https://www.wtxl.com/news/local-news/fci-tallahassee-employees-fear-the-worst-as-inmate-transportation-restarts

Although she is 45 years old, there is little doubt that years of drug abuse have aged Ms. Perry and compromised her immune system. Ms. Perry further suffers from anemia and mental health issues causing her to require medication. Cocaine use on its own often results in significant damage to the respiratory and pulmonary systems of addicts. Ms. Perry's vulnerability to the COVID-19 virus is extraordinary in and of itself. Combined with the impact that COVID-19 is having on Florida, and the transfer of COVID-19 infected inmates into Tallahassee FCI, Ms Perry is in significant risk of serious illness or death from COVID-19 if the Court does not intervene.

### 3. Section 3553(a) factors advise the Court to grant compassionate release.

A defendant seeking compassionate release must also demonstrate that she "is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13. "Section 3142(g) requires the court to consider factors such as the nature and circumstances of the charged offense, the history and characteristic of the defendant, and the nature of seriousness of the danger to a person or the community at large posed by the defendant's release." *Perdigao*, 2020 WL 1672322, at *2 (citing 18 U.S.C. § 3142(g).

The crimes committed by Ms. Perry are serious. Illicit drug use is a pandemic in its own right. It is tearing apart the fabric of American families and ruining the lives of those trapped in addiction . No one understands that better than Ms. Perry . She has lost the things most dear to her: her children, her family, and her freedom. As she notes in her petition to this Court, Ms. Perry's actions prevent her from helping those closest to her in their time of need.

The time that Ms. Perry has served and the loss it is causing her are ample enough to reflect the seriousness of her crimes and just punishment for her actions.  In addition, the goals of deterrence have been served.  The consequences of Ms. Perry's federal sentence for drug dealing should give others significant pause before they engage in similar acts.  The Court can certainly be assured that the time Ms. Perry has served will deter her from dealing drugs once she is released.

The Court can also rely on Ms. Perry's aggressive pursuit of her own rehabilitation and the trust the Bureau of Prisons has placed in her. Ms. Perry successfully completed the Bureau of Prisons' Residential Drug Abuse Program (RDAP) in 2017.  As she continues to celebrates her sobriety, she has found the ability to better herself and prepare for life outside the walls of the Bureau of Prison.  This is illustrated in Ms. Perry's efforts to educate herself through the following BOP classes: Culinary Arts; Building and Trades; Business Education Phase I; Anger Management; Trauma in Life Resolve Program; and a Psychology Class, to name a few.

What should be striking is the trust placed in Ms. Perry by the Bureau of Prisons. Prior to the COVID-19 pandemic, Ms. Perry was employed in the prison staff dining hall as a cook.  It is difficult to imagine a position that requires more trust than that placed in the hands of the prisoner who feeds prison staff and correctional officers.  With that in mind, the Court should be assured that Ms. Perry no longer presents a danger to society.

## CONCLUSION

Without the time she has spent in prison, Ms. Perry understands she likely would have continued the path of drug abuse and criminal activity she was on. Her "rock bottom" was significant federal incarceration. Ms. Perry asks this Court for compassionate release from prison because she fears that incarceration could become a life sentence. The Court should be assured that compassionate release is appropriate because Ms. Perry has rehabilitated herself. She has not only used her time in prison to address her addictions but to also prepare for life outside of prison as a contributing member of society. Her plan is to live with her sister, assist her ailing mother, and maintain employment in culinary arts.

Respectfully Submitted,

SMITH MIHAS PLLC

/s/   Nicole L. Smith
Nicole L. Smith, P62475
Attorney for Defendant
467 Eureka Road, Suite 1
Wyandotte, Michigan 48192
(734) 692-3033
nlsmith@smithmihas.com

Dated: August 21, 2020

CERTIFICATE OF SERVICE

I, under penalty of perjury, certify that I served the foregoing supplemental brief on the Court and all interested parties through the Court's CM/ECF electronic filing service on August 21, 2020.

/s/ Nicole L. Smith
Nicole L. Smith, P62475
Attorney for Defendant