UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO. 11-20677 |
| Plaintiff, | HON. ARTHUR TARNOW |
| v. | |
| D-1   LATOYA PERRY, | |
| Defendant. | |
| _____/ | |

**GOVERNMENT'S RESPONSE TO COURT ORDER REQUIRING GOVERNMENT TO RESPOND TO DEFENDANT'S SUPPLEMENTAL BRIEF [R. 145]**

The United States of America, by and through its undersigned counsel, submits this response to the Court's Order Requiring the Government to Respond to Defendant's Supplemental Brief [R. 145]. Attached, under seal, to this response are Bureau of Prisons records related to Perry's educational record, disciplinary record and work history.

At the last hearing on this case, Perry was dishonest with the Court when she claimed that she had asthma and used an inhaler. Perry's Bureau of Prisons medical records show that she has never been diagnosed or treated for asthma during her entire time in BOP custody. Nor does she offer any evidence that she was diagnosed or treated for asthma before she entered BOP custody. In fact, Perry does not have any medical conditions that increase her risk for Covid-19. She is

essentially a heathy, middle-aged person, who has presented the Court with no extraordinary and compelling medical reasons for her release.

Therefore, Perry's supplemental brief shifts the focus away from her purported medical issues and argues instead that Perry should be released because the original sentence imposed by Judge Cook is unfair due to a change in the law regarding her status as a "career offender" under the Sentencing Guidelines. A change to her career offender status is not, as a matter of law, an "extraordinary and compelling" reason for compassionate release. But even if it were, Judge Cook's sentence was not unfair, despite the change in the law, because Perry expressly decided to forego the exact argument she is making today in exchange for a more favorable plea agreement. In light of Perry's own decision to forego this argument, her sentence is hardly the type of injustice that would constitute an "extraordinary and compelling" reason for her release.

Lastly, even if the Court found that "extraordinary and compelling" reasons for release existed, Perry's motion should still be denied. Her email to the warden does not constitute a proper administrative request for compassionate release and she therefore has not exhausted her administrative remedies. Nor is her educational record and work history inside the BOP sufficient to show that she is fully rehabilitated. Perry's disciplinary record in prison, and most importantly, her false statements to the Court in the last hearing demonstrates that she is not a completely

2

changed person. She continues to disregard basic rules of behavior if doing so gets her something she wants, which is a characteristic that is further exemplified by her chronic criminal record and her dishonest representations at earlier points in the litigation of this case.

ARGUMENT

I. Sentencing Guideline Changes Are Not "Extraordinary and Compelling" Reasons for Compassionate Release

A district court has "no inherent authority . . . to modify an otherwise valid sentence." *United States v. Washington*, 584 F.3d 693, 700 (6th Cir. 2009). Rather, a district court's authority to modify a defendant's sentence is "narrowly circumscribed." *United States v. Houston*, 529 F.3d 743, 753 n.2 (6th Cir. 2008). Absent a specific statutory exception, a district court "may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). Those statutory exceptions are narrow. *United States v. Ross*, 245 F.3d 577, 586 (6th Cir. 2001). Compassionate release under 18 U.S.C. § 3582(c)(1)(A) is equally narrow.

Compassionate release must be "consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). Congress tasked the Sentencing Commission with "describ[ing] what should be considered extraordinary and compelling reasons for [a] sentence reduction" under § 3582(c)(1)(A), as well developing "the criteria to be applied and a list of specific examples" for when release is permitted. 28 U.S.C. § 994(t).

3

Because the Sentencing Commission has fulfilled Congress's directive in USSG § 1B1.13, that policy statement is mandatory. Section 3582(c)(1)(A)'s reliance on the Sentencing Commission's policy statements mirrors the language governing sentence reductions under 18 U.S.C. § 3582(c)(2) for retroactive guideline amendments. *Compare* § 3582(c)(1)(A) *with* § 3582(c)(2). When Congress uses the same language in the same statute, it must be interpreted in the same way. *Marshall*, 954 F.3d at 830. In both contexts, then, the Sentencing Commission's restraints "on a district court's sentence-reduction authority [are] absolute." *United States v. Jackson*, 751 F.3d 707, 711 (6th Cir. 2014); *accord Dillon v. United States*, 560 U.S. 817, 830 (2010).

The First Step Act did not change that. It amended only *who* could move for compassionate release under § 3582(c)(1)(A). It did not amend the substantive requirements for release. *United States v. Saldana*, No. 19-7057, 2020 WL 1486892, at *2–*3 (10th Cir. Mar. 26, 2020); *United States v. Mollica*, No. 2:14-CR-329, 2020 WL 1914956, at *4 (N.D. Ala. Apr. 20, 2020). Section 1B1.13 remains binding.

Section 1B1.13 cabins compassionate release to a narrow group of non-dangerous defendants who are most in need. That policy statement limits "extraordinary and compelling reasons" to four categories: (1) the inmate's medical condition; (2) the inmate's age; (3) the inmate's family circumstances; and

4

(4) other reasons "[a]s determined by the Director of the Bureau of Prisons," which the Bureau of Prisons has set forth in [Program Statement 5050.50](). USSG § 1B1.13 cmt. n.1. Changes to the career offender provisions in the Sentencing Guidelines are not included in the BOP's Program Statement, and therefore do not qualify as "other reasons" for a prisoner's compassionate release. And for good reason. If changes to the sentencing guideline calculations qualified as "extraordinary and compelling" for release, then there would never be any finality to a conviction. Each change to the Sentencing Guidelines – either through case law or through the Sentencing Commission – would provide a defendant with a valid ground to revisit his or her sentence. Such a result would be inconsistent with the "narrowly circumscribed" nature of the compassionate release statute. *Houston*, 529 F.3d at 753 n.2.

II.     Perry's Sentence is Not Unjust

Even if changes to the Sentencing Guidelines were, generally speaking, considered "extraordinary and compelling" reasons for release, they would not justify Perry's early release in this case. This is because Perry expressly decided to forego making these arguments in exchange for a more lenient plea agreement.

Perry pleaded guilty pursuant to a Rule 11 plea agreement in which she agreed that she was a career offender under the Sentencing Guidelines. (R. 27: Plea Agreement, PgID 50). Her decision not to contest the career offender guideline

5

must be understood in light of the fact that she was able to negotiate a plea agreement that left her in a better position than had she gone to trial. Perry had distributed over 51 grams of crack cocaine, *see* Presentence Report at ¶ 13-14, and was subject to a five-year mandatory minimum sentence. Given that Perry had prior drug trafficking convictions, the mandatory minimum could have been enhanced to 10 years had the government elected to do so. 21 U.S.C. § 841(b)(1)(B). However, Perry was able to negotiate a plea agreement that contained a minimum sentence of seven years, which was less than the 10 years she would have been facing otherwise. Therefore, Perry made the strategic decision to forego disputing the application of the career offender guidelines and instead obtain a plea agreement that allowed her to pursue a sentence below the 10-year mandatory minimum.

After Perry pleaded guilty, she filed a motion to withdraw her plea on the ground that her conviction under Indiana's escape statute did not constitute a crime of violence – the exact same argument Perry is currently making. (R.43: Motion to Withdraw Guilty Plea, PgID 101). However, Perry decided to withdraw this motion during a hearing before Judge Cook. (R.72: Motion Hearing Trans., PgID 221). At the hearing, Perry explained to Judge Cook in her own words that she did not want to withdraw her plea and that she preferred the plea agreement because it permitted her to ask for a sentence as low as seven years, as opposed to facing a

6

possible 10-year mandatory minimum without the plea agreement. (*Id.* at PgID 223). According to Perry, "[t]he seven years sound better to me to try to fight for." (*Id.*). Defense counsel stated that Perry had decided to withdraw her motion after defense counsel had "many, many jail visits and conversations" with Perry. (*Id.*, PgID 225).

This Court is familiar with this aspect of Perry's case. After her case was reassigned to this Court, Perry filed a motion under 28 U.S.C. § 2255, arguing that her attorneys were constitutionally ineffective for allowing her to plead guilty as a career offender. This Court reviewed the history of her plea proceedings and held that "[e]ven assuming that Ms. Perry's escape conviction could not be used as a career offender predicate, and that her first lawyer rendered deficient performance, she has not shown that she suffered prejudice as a result." (R. 105: Order Denying § 2255 Motion, PgID 643-44) (Tarnow, J.). This is because Perry "had an opportunity to challenge" her status as a career offender, but "declined to do so." (*Id.* at PgID 644). The Court explained that Perry's decision "makes sense" because she was "able to obtain a plea agreement that provided her the possibility of being sentenced to as few as seven years' imprisonment." (*Id.* at PgID 646). As this Court further explained in a subsequent order addressing this same issue: "She took a risk and traded her rights to contest the charges against her for the ability to ask the sentencing court for a downward departure to a seven-year sentence." (R.

7

124: Order Denying Motion for Reconsideration, PgID 719) (Tarnow, J.). That risk did not payoff for Perry, because Judge Cook determined that her extraordinarily chronic criminal record demanded a sentence significantly higher than seven years. But just because Perry's decision did not ultimately produce a favorable result (from her perspective) does not mean that her sentence was unfair or unjust. This Court was correct in finding that Perry suffered no prejudice from her plea as a career offender. For the same reasons, that same plea is not now so unjust as to constitute an "extraordinary and compelling" reason for her release.

III.   Perry Has Not Exhausted Her Administrative Remedies

If a defendant moves for compassionate release, the district court may not act on the motion unless the defendant files it "after" either completing the administrative process within the Bureau of Prisons or waiting 30 days from when the warden at his facility received his request. 18 U.S.C. § 3582(c)(1)(A); *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). This statutory exhaustion requirement is mandatory. *Alam*, 960 F.3d at 833-36. As Judge Roberts recently explained, the law requires "at a minimum" that a compassionate release request to the warden "must contain" certain important information, including: "(1) the extraordinary or compelling circumstances that the inmate believes warrant consideration; and (2) proposed release plans, including where the inmate will reside, how the inmate will support himself/herself, and, if the basis for the request

8

involves the inmate's health, information on where the inmate will receive medical treatment, and how the inmate will pay for such treatment." *United States v. Hicks*, No. 96-20335, 2020 WL 4791204, *2 (E.D. Mich. Aug. 17, 2020) (citing 28 C.F.R. § 571.61).

Perry's email does not meet these basic requirements. The email does not provide information on "how the inmate will support" herself, which is a critically important consideration for someone, like Perry, who has been involved with drug trafficking her entire adult life and has had "no gainful, steady, documented employment in the last ten years," prior to her incarceration. (Presentence Report, ¶ 86, p. 24). It is also worth noting that Perry's email sought release based only on her legally incorrect claim that her sentence should be lower because of the change to crack cocaine sentencing in the Fair Sentencing Act, and concerns related to her mother's and sister's health. (R. 124: Order Denying Motion for Reconsideration, PgID 719) (Tarnow, J.) (denying Perry's motion to be sentenced under the Fair Sentencing Act). The email did not seek compassionate release based on her health or Covid-19. Perry's email is not a proper administrative request for compassionate release and her motion should be denied.

IV.   Perry Has Not Rehabilitated Herself

Perry's BOP records show that she has taken several educational, vocational, drug treatment, and exercise courses while in BOP custody. She has also worked at

9

various jobs within the prison. While this conduct is positive and encouraging, it is tempered by the fact that Perry has had several disciplinary violations over the years, including violations for: fighting with another inmate (2014), interfering with taking count (2014), misusing medication (2016), being in an unauthorized area (2016), being absent from an assignment (2017), engaging in sexual acts (2017), and being unsanitary or untidy (2019). But even more troubling is Perry's deceptive answers to the Court's questions about her medical problems at the last court hearing, especially her false claim that she had asthma and was using an inhaler. Perry's BOP medical records show no indication that she has ever been diagnosed or treated for asthma. Perry's attempt to deceive the Court is yet another dishonest representation that Perry has made at different stages of this case:

- At sentencing, for example, Perry claimed that she had post-traumatic stress disorder and bi-polar disorder, but Judge Cook expressly rejected these claims after listening to her psychologist's testimony. (R. 74: Sent. Hearing Trans., PgID 376-77 ("I have listened to Doctor Wendt's [Perry's psychologist] recitation and I have attempted to evaluate his conclusions based on his examination. Unfortunately, I find it difficult to accept his conclusions as it relates to Ms. Perry. And thus I cannot and will not accept Doctor Wendt's conclusions as announced in this court today.")).

- On appeal, Perry argued her plea was involuntary because she had low intelligence. (*United States v. Perry*, Sixth Circuit Case No. 14-1327, R. 39: Def. Brief). But such a claim was contradicted by her multiple interactions with Judge Cook, the findings of her own psychologist, and the findings of a BOP psychologist. In fact, the BOP psychologist – who examined Perry near in time to her sentencing – concluded that "there was no indication that Ms. Perry was suffering from any form

10

>of involuntary interference with mental functioning or any level of mental retardation." (R. 77: BOP Forensic Report, at 12).

Perry's willingness to the lie to the Court at the prior hearing means that she still has difficulty conforming her behavior to basic norms. The fact that she has taken educational classes and worked jobs inside prison has not solved this problem – as further demonstrated by her disciplinary record. If Perry is willing to deceive the Court to get something she wants, the Court cannot have confidence that, if released, Perry will not break the law to get something else she desires. And when Perry's many years of criminal behavior are added to the calculus, it becomes even more tenuous to believe that her educational classes and work assignments in prison (which have not made her free of disciplinary problems or eliminated her penchant for dishonesty) have rehabilitated her to such an extent that releasing her would promote respect for the law, provide just punishment, deter criminal conduct, and protect the public.

## CONCLUSION

Perry's motion for compassionate release should be denied.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

s/ Michael C. Martin
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9100
Michael.C.Martin@usdoj.gov

Date: October 16, 2020

## **CERTIFICATE OF SERVICE**

      I hereby certify that on <u>October 16, 2020</u>, I filed the foregoing document on the ECF system, which will send notice to Nicole Smith, defendant's attorney of record.

                                                <u>s/Michael C. Martin</u>
                                                Michael C. Martin
                                                Assistant United States Attorney
                                                211 W. Fort Street, Suite 2001
                                                Detroit, MI 48226
                                                Phone: (313) 226-9100
                                                E-Mail: Michael.C.Martin@usdoj.gov