UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.

LATOYA PERRY,

        Defendant.
                               /

Criminal Case No. 11-20677

SENIOR U.S. DISTRICT JUDGE
ARTHUR J. TARNOW

**OPINION AND ORDER GRANTING LATOYA PERRY'S MOTION FOR RELEASE [134]**

Defendant-petitioner, Latoya Perry, is serving a 188-month sentence for distribution of a controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). (ECF No. 67, PageID.189). Perry pleaded guilty on March 12, 2013 and was sentenced by the Honorable Julian A. Cook on March 7, 2014. (ECF No. 27; ECF No. 74).

On August 11, 2020, the Court received a letter from Perry requesting early release. (ECF No. 134). The Court interpreted Perry's letter as a petition for compassionate release pursuant to 18 U.S.C. § 3582(c)(1) and appointed counsel. (ECF No. 135.). After receiving supplemental briefing and holding a video hearing on August 27, 2020, the Court took Perry's request under advisement and ordered the parties to file supplemental records. (ECF No. 142). Perry submitted

documentation of her administrative request for release. (ECF No. 144-1, PageID.853). The Government provided the Court with information regarding requests for compassionate release at FCI Tallahassee. (ECF No. 143). The Court did not receive the entirety of the records it expected, however. Accordingly, the Court ordered the Government to submit the remainder of Perry's BOP records and respond to Perry's Brief [144] in an additional supplemental filing. (ECF No. 145). The Government did so on October 16, 2020. (ECF No. 146). Perry replied on October 21, 2020. (ECF No. 149).

For the reasons articulated below, the Court will **GRANT** Perry's Motion [134], and reduce her sentence to time served.

## BACKGROUND

Perry was born in Detroit, Michigan in 1974 and survived a very traumatic childhood. (PSR ¶ 69). Though her family was never investigated for allegations of abuse or neglect, Perry suffered extensive physical and sexual abuse while growing up. (*Id.*). Her stepfather frequently became drunk and beat her and her mother. (*Id.*). In addition, Perry's uncle began paying her for sexual favors at age seven. (*Id.*). By the time Perry turned ten, her uncle was paying her to have sex with him several times a year. (*Id.*). At thirteen, Perry left home and started selling crack cocaine to achieve financial independence. (*Id.*). Within the next few years, Perry began seeing a man named Terry Wallace and eventually became pregnant. (*Id.*). Perry has three

children from this relationship, two of whom were placed in the custody of her mother and stepfather when she was imprisoned. (PSR ¶ 72).

Adulthood provided little relief for Perry. In 2004, she was raped, which appears to have deepened her reliance on narcotics and illegal prescription drugs. (PSR ¶ 81). Since then, she has experienced the murders of close friends and family members, including her brother. (ECF No. 136, PageID.753). In 2011, she was diagnosed with Bipolar I Disorder with symptoms of depression. (PSR ¶ 76). Her medical records suggest she may also have PTSD. (*Id.*).

Given its length, the most surprising thing about Perry's criminal record is that it contains few, if any, serious charges. Perry began having run-ins with the police in her early teens—around the time she dropped out of high school. (PSR ¶¶ 50, 69, 84). She has a number of minor convictions for possession, as well as for crimes seemingly related to supporting her addiction, such as theft. (PSR ¶¶ 29-68). Perry was arrested for her current offense on April 13, 2011. (PSR ¶ 2). She was sentenced to fifteen years in prison for selling small amounts of cocaine to undercover agents three times within a one-month period in 2010. (PSR ¶ 13).

Perry is forty-five years old, currently incarcerated at FCI Tallahassee, and scheduled for release on October 10, 2023. *Find an Inmate*, FED. BUREAU PRISONS, https://www.bop.gov/mobile/find_inmate/index.jsp (BOP Register No. 45598-039) (last visited Nov. 18, 2020).

ANALYSIS

Section 3582(c)(1) of Title 18 of the U.S. Code, colloquially known as the compassionate release statue, provides, in relevant part:

**(A)** [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
**(i)** extraordinary and compelling reasons warrant such a reduction.
[. . .]
and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1).

A. Exhaustion

Before a petitioner moves for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), they must either exhaust their administrative remedies with the BOP or wait thirty days from when they filed a request with their warden. *United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Perry submitted a request for compassionate release on January 3, 2020. (ECF No. 144-1, PageID.853). This request sufficiently complies with 28 C.F.R. 571.61 by stating that she will reside

with her sister and serve as a caregiver for her mother. (*Id.*). Accordingly, the Court finds that Perry has satisfied the exhaustion requirement of § 3582(c)(1)(A).

As the Sixth Circuit recently clarified, the Court now must proceed through a three-step inquiry:

> At step one, a court must "find[]" whether "extraordinary and compelling reasons warrant" a sentence reduction. 18 U.S.C. § 3582(c)(1)(A)(i). At step two, a court must "find[]" whether "such a reduction is consistent with *applicable* policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)(A) (emphasis added). At step three, "§ 3582(c)[(1)(A)] instructs a court to consider any applicable § 3553(a) factors and determine whether, in its discretion, the reduction authorized by [steps one and two] is warranted in whole or in part under the particular circumstances of the case." [*Dillon v. United States*, 560 U.S. 817, 827 (2010).]

*United States v. Jones*, No. 20-3701, 2020 WL 6817488, at *6 (6th Cir. Nov. 20, 2020) (first four alterations in original) (footnotes omitted).

B. Extraordinary and Compelling Reasons for Release

In order to ascertain whether there are extraordinary and compelling reasons to order release, this Court has typically looked to U.S.S.G. 1B1.13. Its Application Notes provide "three specific extraordinary and compelling reasons (tied to the defendant's health, age, or family circumstances) and a fourth catchall." *United States v. Ruffin*, 978 F.3d 1000, 1004-05 (6th Cir. 2020) (citing U.S.S.G. § 1B1.13 cmt. n.1(A)-(D)). As the Sixth Circuit explained in *Jones*, however, this approach is incorrect in defendant-filed motions for compassionate release. *See* 2020 WL 6817488, at *7-8 (distinguishing compassionate release motions brought by

defendants from those brought by the Director of the Bureau of Prisons). This is because "the passage of the First Step Act rendered § 1B1.13 'inapplicable' to cases where an imprisoned person files a motion for compassionate release." *Id.* at *7 (citing *United States v. Brooker*, 976 F.3d 228, 234 (2d Cir. 2020)). Accordingly, "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, district courts have full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.*

It is against this backdrop that the Court considers Perry's two primary arguments for release: heightened susceptibility to serious illness from COVID-19 and sentence disparity created by continued application of her career offender enhancement. (ECF No. 136, PageID.758; ECF No.144, PageID.850).

### 1. Medical Conditions

Perry argues that she is particularly vulnerable to a severe illness from COVID-19 due to her weight and a lifetime of substance abuse.[1] (ECF No. 136, PageID.753). The Court agrees.

Perry's medical records reveal that she has a Body Mass Index ("BMI") of 26.8, which qualifies her as "overweight" and may raise her risk of developing a

---

[1] The Court does not address the respiratory issues first raised at the August 27, 2020 hearing due to the fact that they are not documented in Perry's PSR or medical records.

severe illness from COVID-19. (ECF No. 140-1, PageID.817); *see People with Certain Medical Conditions*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html [https://perma.cc/42WN-G7CY] (last updated Nov. 2, 2020); *see also Calculate Your Body Mass Index*, NAT'L HEART, LUNG, & BLOOD INST., https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm [https://perma.cc/MR87-PB2Q] (last visited Nov. 24, 2020).

Perry's PSR, meanwhile, details a lengthy history of severe addiction, describing abuse of marijuana, cocaine, heroin, prescription drugs, and alcohol dating back to the age of fourteen. (PSR ¶¶ 78-82). She was diagnosed with Opioid Use Disorder by the Bureau of Prisons. (ECF No. 140-1, PageID.822). Although substance abuse is not listed by the CDC as a definite risk factor for severe infection from COVID-19, researchers have recently determined that "people with [Substance Abuse Disorders] are indeed at higher risk of contracting and suffering worse consequences from COVID-19" and that "[t]his [is] especially true for African Americans." Nora Volkow, *New Evidence on Substance Use Disorders and COVID-19 Susceptibility*, NAT'L INSTS. HEALTH: NAT'L INST. ON DRUG ABUSE (Oct. 5, 2020), https://www.drugabuse.gov/about-nida/noras-blog/2020/10/new-evidence-substance-use-disorders-covid-19-susceptibility [https://perma.cc/63YY-3M3E] (explaining that "many kinds of chronic substance use harm or weaken the body in

ways that make people who use substances more vulnerable to infection"); *see also COVID-19 Questions and Answers: For People Who Use Drugs or Have Substance Use Disorder*, CTRS. FOR DISEASE CTRL. & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/other-at-risk-populations/people-who-use-drugs/QA.html [https://perma.cc/5KNZ-99Q2] (last updated Oct. 27, 2020) (noting that "it is possible that drug use could make COVID-19 illness more severe"). Accordingly, despite some equivocation by the CDC, the Court finds that Perry's medical conditions place her at a higher risk of developing a severe illness from COVID-19.

This heightened risk is particularly concerning in light of FCI Tallahassee's record of COVID-19 infections. *See generally* Jacob Murphey, *Federal Correctional Institution Tallahassee Sees Spike in Active Inmate COVID-19 Infections*, WCTV (Oct. 19, 2020), https://www.wctv.tv/2020/10/20/federal-correctional-institution-tallahassee-sees-spike-in-active-inmate-covid-19-infections/ [https://perma.cc/4H3A-292T] (noting that "[n]o federal prison in the South has more active coronavirus cases than the Federal Correctional Institution in Tallahassee"). At present, the BOP counts three positive cases at FCI Tallahassee among inmates and thirteen positive cases among staff. *See COVID-19 Coronavirus*, FED. BUREAU PRISONS, https://www.bop.gov/coronavirus/ [https://perma.cc/64K3-Q2LA] (last updated Nov. 23, 2020). The outbreak may be worse than is apparent

from these numbers, however, given that the facility continues to fail to test its entire population. *Compare id.* (659 completed tests), *with FCI Tallahassee*, FED. BUREAU PRISONS, https://www.bop.gov/locations/institutions/tal/ [https://perma.cc/7G3B-77N6] (last visited Nov. 24, 2020) (827 total inmates).

Accordingly, Perry's risk of developing a severe illness from COVID-19 constitutes an extraordinary and compelling reason for release.

### 2. *Career Offender Disparity*

Perry also argues that release is justified because her career offender designation, which doubled her guidelines range, would not have applied under current law. (ECF No. 144, PageID.850). Perry qualified as a career offender due, in part, to an August 22, 1996 "escape" from an Indiana police department. (PSR ¶ 33). After being restrained to a bench, Perry, who was underweight at the time, slipped out of the handcuffs in which she had been placed and walked out the door. (*Id.*; ECF No. 144, PageID.850). Perry is correct that under current law, such an act would not constitute a crime of violence sufficient to render her a career offender. *See United States v. Covington*, 738 F.3d 759, 767 (6th Cir. 2014) (violating Michigan's law against breaking and escaping prison does not involve sufficient force or threatened force against the person or property of another to qualify as a crime of violence); *United States v. Kinsey*, 406 Fed. App'x 1 (6th Cir. 2010) (violating 18 U.S.C. § 751(a), the federal escape statute, is not a crime of

violence). Indeed, this was the case even at the time Perry was sentenced, as this Court noted in mid-2019. (ECF No. 121, PageID.697).

Ultimately, however, while the Court would likely find that the disparity created by the career offender designation constitutes an additional independent extraordinary and compelling reason for relief, *see, e.g.*, *United States v. Baker*, No. 10-20513, 2020 WL 4696594, at *4 (E.D. Mich. Aug. 13, 2020), it need not decide the issue. Perry's risk of serious illness from COVID-19 is alone sufficient for the Court to proceed to the final step[2] of the compassionate release analysis. *See Jones*, 2020 WL 6817488, at *6.

C. Section 3553(a) Factors

The last step a district court contemplating a motion for compassionate release must take is to consider the sentencing factors provided by 18 U.S.C. § 3553(a) "to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). Importantly, courts have an "obligation to explain [the § 3553(a) balancing more extensively] . . . when the original sentencing judge and the compassionate release decision judge are different persons, as the original sentencing transcript does not reflect the latter judge's factual reasons for their § 3582(c)(1)(A) decision." *Jones*, 2020 WL

---

[2] This Court has previously treated dangerousness as an independent inquiry to be conducted prior to the § 3553(a) analysis pursuant to U.S.S.G. 1B1.13. *Jones*, however, makes clear that this inquiry is not "applicable" to defendant-filed compassionate release motions. *See* 2020 WL 6817488, at *6. Accordingly, the Court considers dangerousness purely in the context of the § 3553(a) analysis.

6817488, at *11. "But 'as long as the record as a whole demonstrates that the pertinent factors were taken into account by the district court[,]' a district judge need not 'specifically articulat[e]' its analysis of every single § 3553(a) factor." *Id.* (quoting *United States v. Curry*, 606 F.3d 323, 330 (6th Cir. 2010)).

With that in mind, the § 3553(a) factors are as follows:

**(a) Factors to be considered in imposing a sentence.** The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
   **(1)** the nature and circumstances of the offense and the history and characteristics of the defendant;
   **(2)** the need for the sentence imposed—
      **(A)** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
      **(B)** to afford adequate deterrence to criminal conduct;
      **(C)** to protect the public from further crimes of the defendant; and
      **(D)** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
   **(3)** the kinds of sentences available;
   **(4)** the kinds of sentence and the sentencing range established for—
      **(A)** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—
      [. . .]
   **(5)** any pertinent policy statement—
      [. . .]
   **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
   **(7)** the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Though Perry's criminal record is lengthy, it is comprised of mostly low-level offenses. (PSR ¶¶ 29-68). Indeed, apart from the instant offense, only one of Perry's crimes—the 1996 walk-away discussed above—was serious enough to warrant time in prison. (PSR ¶ 32). Moreover, at this point, Perry has been in federal custody for nearly a decade. This period of incarceration is the longest she has ever faced by a wide margin. Accordingly, the Court finds that it properly reflects the seriousness of her offense and has provided just punishment.

The Court is also persuaded that Perry's time in federal custody has sufficiently promoted her respect for the law and deterred future similar conduct. Perry has made excellent use of her time in prison by taking more than two thousand hours of classes focusing on vocational skills, life skills, and general education, among other things. (ECF No. 147-1, PageID.884). Even more notable is Perry's successful completion of the Residential Drug Abuse Program ("RDAP"). (*Id.*). The overwhelming majority of Perry's criminal history appears to the Court to be attributable to substance abuse and addiction. By confronting these issues head on in RDAP, Perry has managed to become clean for the first time in decades and has addressed the primary driver of her criminality. This persuades the Court that she will not engage in future drug dealing and that her continued incarceration is not necessary to protect the public. Moreover, although Perry's disciplinary record is not

spotless, the Court notes that Perry has been free of serious discipline for several years. (ECF No. 147-1, PageID.885). Her only violation in more than three years is for "being unsanitary or untidy." (*Id.*). Accordingly, Perry's disciplinary history does not change the Court's opinion that she will not present a danger upon release.

Lastly, the Court considers the sentencing disparity caused by continued application of the career offender enhancement to Perry, as well as the fact that the BOP has severely curtailed programming in response to COVID-19. In light of Perry's health conditions and these additional considerations, the Court finds that there is little to be gained by Perry's continued incarceration. If released, Pserry will be able to help care for her ailing mother and receive medical and mental health treatment in a safer environment than she is in currently. Accordingly, a sentence reduction to time served is warranted under the § 3553(a) factors.

## CONCLUSION

**IT IS ORDERED** that Perry's Motion for Compassionate Release [134] is **GRANTED** and that her sentence is reduced to time served.

**IT IS FURTHER ORDERED** that Perry be **IMMEDIATELY RELEASED** to begin her four-year term of **SUPERVISED RELEASE**, as outlined by the March 7, 2014 Judgment (ECF No. 67). The special conditions of supervision listed on the Judgment (ECF No. 67, PageID.192) are stricken and shall be replaced with the following:

**The defendant shall undergo a strict fourteen-day quarantine upon her release and shall fully comply with any applicable state or local stay-at-home orders, social distancing guidelines, or other public health restrictions.**

**The defendant shall participate in a program approved by the Probation Department for substance abuse, which may include testing to determine whether the defendant has reverted to the use of drugs or alcohol, if necessary.**

**The defendant shall submit to a psychological/psychiatric evaluation as directed by the probation officer, if necessary.**

**The defendant shall enroll and participate in a Cognitive Behavior Therapy program (CBT) as approved by the Probation Department, if necessary.**

**The defendant shall participate in a program approved by the Probation Department for mental health counseling, if necessary.**

**The defendant shall take all medications prescribed by her treating physician and/or mental health professional.**

**SO ORDERED.**

Dated: November 30, 2020

s/Arthur J. Tarnow
Arthur J. Tarnow
Senior United States District Judge